UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CLIFFORD D. MCKEE,

        Petitioner,                      Case No. 1:23-cv-768

v.                                          Honorable Sally J. Berens

JAMES SCHIEBNER,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.14.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.  Factual Allegations

Petitioner Clifford D. McKee is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon Heights, Muskegon County, Michigan. Following a jury trial in the Jackson County Circuit Court, Petitioner was convicted of one count of first-degree murder, in violation of Mich. Comp. Laws § 750.316(1), one count of conspiracy to commit first-degree murder, in violation of Mich. Comp. Laws § 750.157a, one count of first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(2), and one count of solicitation of murder, in violation of Mich. Comp. Laws § 750.157b(2). The trial court subsequently sentenced Petitioner as a fourth offense habitual offender, pursuant to Mich. Comp. Laws § 769.12, to life without parole for the first-degree murder and conspiracy convictions, life imprisonment for the solicitation of murder conviction, and 30 to 60 years' imprisonment for the home invasion conviction. *See People v. McKee*, Nos. 333720, 335767, 336598, 2018 WL 1072808, at *1 (Mich. Ct. App. Feb. 27, 2018).

Petitioner was tried jointly before a single jury with co-defendants Rodney Jamar McKee and Cortez Antonio Butler. *See id.* The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> Defendants' convictions arise from the stabbing death of Frances Craig, who was killed inside her home in Jackson, Michigan. The victim's body was discovered in her bedroom on the morning of August 10, 2014. The victim shared the home with

3

her two young daughters, her fiancé Eric Wolfe, and Wolfe's young daughter. Before the victim and Wolfe moved to the home in June 2014, they had been living in an apartment at the Oaks Apartment Complex in Jackson. In March 2014, Wolfe's friend, Ryan Marshall, moved into the apartment with Eric and the victim after a fire destroyed the apartment that Ryan and his mother, Donna Marshall, were living in. Donna sold drugs for Rodney, who she knew as "Neffue," but she wanted to stop selling. On the day of the fire, Ryan saw Rodney sneaking around outside the house, and Rodney was charged with first-degree arson in connection with the fire. Ryan intended to testify against Rodney in the arson case. When the victim and Wolfe moved to their new residence, Ryan did not move with them.

The evidence presented at trial showed that the victim suffered 20 deep stab wounds, including wounds to her neck. Her wrists were confined with zip ties and she was gagged with a scarf that had been wrapped around her neck. Wolfe was initially considered the prime suspect in the homicide. However, Wolfe claimed that he was at work at the time the victim was killed and a review of the cameras at his place of employment provided no indication that he had left work during that time frame.

DNA testing revealed that the zip ties from the victim's hands contained DNA from a male donor. In November 2014, this DNA was matched to Butler's DNA in the Combined DNA Index System (CODIS). A forensic analysis of Butler's cell phone records revealed that Butler's phone was in the Jackson area on August 6, 8 and 10, and that the Jackson area was outside that phone's "pattern of life." On those dates, Butler's phone communicated frequently with several phone numbers, including a number that was registered under the name "Dorito Johnson," a street name for Clifford. On December 11, 2014, real-time GPS tracking located Clifford's phone at a mall in Jackson, where Clifford was arrested and police seized three cell phones from him. Clifford admitted knowing Butler and phone mapping data showed that Butler's phone and Clifford's phone had traveled together on I–94.

On December 11, 2014, detectives interviewed Butler at the Detroit Detention Center. The interview was recorded and Butler denied knowledge of the Jackson homicide. Detectives interviewed Butler again on December 16 in Detroit, when they went to obtain a buccal swab to confirm the DNA match. After being assured that his interview was not being recorded, Butler confessed to the detectives that "Dorito Johnson" had contacted him to "perform a hit" on a person who was going to testify against Rodney[1] in an upcoming criminal case. Butler told detectives that he had traveled with Dorito Johnson from Detroit to Jackson and that Rodney, who was driving a white SUV, paid $5,000 of the agreed $10,000 fee up front. Butler said that he entered the victim's residence and was unable to locate the intended target in the home, so he went into the master bedroom where he woke up the victim to interrogate her about the individual's location. He explained that he ultimately killed the victim because he believed she saw his face. Butler told detectives that he "damn near cut the Bitch's head off." Another witness, Dale Morgan, testified that he and Butler had an argument in December 2014 about a cell phone and that Butler told him to "shut the f**k up, I know what I'm doing," "I just chopped a

4

Bitch up in Jackson." At trial, Butler denied killing the victim and denied making statements to the police and to Morgan.

---

[1]Butler used a street name for Rodney and described him as a "very, very large man, 6'6", 6'7", and about 400 pounds."

*Id.* at *1–2.

Petitioner and his co-defendants appealed following sentencing, and their appeals were consolidated by the Michigan Court of Appeals for purposes of decision. In his direct appeal, Petitioner argued that the "trial court erred by instructing the jury to reread the instructions on transferred intent and conspiracy in response to a jury question seeking clarification on the intent required for the murder charge." *Id.* at *7. The court of appeals rejected this claim, noting that counsel had expressed satisfaction with the given instructions, "thereby extinguishing any error and waiving review of this claim." *Id.*

Petitioner also argued that the trial court "abused its discretion by denying his motion for a mistrial after the prosecution cross-examined Butler about his involvement in other, unrelated homicides that did not involve [Petitioner]." *Id.* at *14. The court of appeals rejected this argument, nothing that "the risk of prejudice from the admission of this evidence was alleviated by a proper cautionary instruction." *Id.* The court of appeals noted that, as part of his challenge to the denial of a mistrial, Petitioner challenged, "in a roundabout way, the trial court's pretrial rulings regarding the admissibility of Butler's statement as substantive evidence against [Petitioner] and Rodney." *Id.* at *14 n.13. Specifically, Petitioner contended that the statement was not admissible because the detectives had failed to give proper warnings to Butler pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and that the trial court had erred by concluding that the confession was nontestimonial and, therefore, admissible despite Petitioner's "confrontation clause objections." *Id.* The court of appeals rejected this arguments, noting that any confrontation clause concerns

5

were alleviated by Butler's choice to testify at trial, and that Petitioner could not seek to have Butler's confession suppressed based on a violation of Butler's rights. *Id.*

The court of appeals affirmed Petitioner's convictions and sentences, as well as the convictions and sentences of his co-defendants, on February 27, 2018. *Id.* at *1. Petitioner then filed an application for leave to appeal to the Michigan Supreme Court. Ultimately, the supreme court denied Petitioner's application for leave to appeal on April 22, 2022. *See People v. McKee*, 972 N.W.2d 257 (Mich. 2022).

On July 19, 2023, Petitioner filed the present habeas corpus petition, raising four grounds for relief, as follows:

I. The trial court erred in denying Petitioner's request for a mistrial where admission of Butler's statement impaired Petitioner's substantial rights.

II. The trial court reversibly erred when it denied Petitioner's motion for severance based on Butler's confession.

III. Butler was not provided full and effective *Miranda* warning[s,] and his confession was obtained in violation of *Miranda v. Arizona*.

IV. The petitioner can challenge the admission of Butler's confession because Butler's statement is inadmissible hearsay.

(Pet., ECF No. 1, PageID.5–10.)

**II.   AEDPA Standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination

6

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

7

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of Section 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015); *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Discussion

As noted above, Petitioner asserts four grounds for relief, all of which center upon the trial court's decision to try Petitioner and his co-defendants in a single trial and the decision to admit Butler's statement during that trial.

#### A.     Ground I—Denial of Petitioner's Request for a Mistrial

As his first ground for relief, Petitioner contends that the trial court erred by denying his request for a mistrial because the "admission of Butler's statement impaired Petitioner's substantial rights." (Pet., ECF No. 1, PageID.5.) Petitioner asserts that the trial court erroneously admitted Butler's confession against Petitioner. (*Id.*) The court of appeals rejected Petitioner's argument, stating:

> [Petitioner] argues that the trial court abused its discretion by denying his motion for a mistrial after the prosecution cross-examined Butler about his involvement in other, unrelated homicides that did not involve Clifford. As previously discussed, the risk of prejudice from the admission of this evidence was alleviated by a proper cautionary instruction. There is no reason to conclude that the jury was not capable of following the trial court's instruction that this evidence could not be considered against [Petitioner], especially considering that this evidence did not implicate [Petitioner] in the other homicides and the trial court specifically advised the jury that the evidence had nothing to do with [Petitioner]. Given these circumstances, the trial court's denial of Clifford's motion for a mistrial was not an abuse of discretion.

*McKee*, 2018 WL 1072808, at *14.

With respect to Petitioner's claim that the trial court erred in denying his request for a mistrial, the decision to grant or deny a mistrial is, generally, a matter under state law, and a

9

challenge to such a decision is not cognizable on federal habeas review. *See, e.g.*, *Barry v. Warren*, No. 19-1855, 2019 WL 7834652, at *3 (6th Cir. Dec. 11, 2019); *Hruby v. Wilson*, 494 F. App'x 514, 516 (6th Cir. 2012). That decision, however, may impact federal constitutional rights. *Arizona v. Washington*, 434 U.S. 497, 514 (1978) ("[A] constitutionally protected interest is inevitably affected by any mistrial decision."). For example, if a mistrial is requested because of perceived unfairness caused by the admission of evidence or improper argument, and the request is denied, the underlying impropriety might result in the denial of due process. Thus, federal habeas courts "have an obligation to satisfy themselves that . . . the trial judge exercised 'sound discretion'" when considering a request to declare a mistrial. *Washington*, 434 U.S. at 514. Filtered through the doubly deferential standard of the AEDPA, "[t]he question . . . is . . . whether the determination of the [state courts] . . . was 'an unreasonable application of ... clearly established Federal law.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Petitioner does not indicate what "substantial rights" he believes were violated by the admission of Butler's statement. The court of appeals' opinion, however, suggests that Petitioner contends that the admission of Butler's statement violated his Confrontation Clause rights. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

"Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a

codefendant." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). The Supreme Court, however, has held that a non-testifying defendant's statement cannot be admitted at a joint trial if it facially incriminates the co-defendant. *Bruton v. United States*, 391 U.S. 123, 135–36 (1968). Here, however, Cortez testified during the joint trial, and Petitioner, through counsel, would have had the opportunity to cross-examine Cortez. Thus, any *Bruton* and Confrontation Clause concerns were alleviated, and Petitioner's suggestion otherwise is meritless. Moreover, as noted by the court of appeals, the jurors were instructed that any testimony regarding unrelated homicides did not apply to Petitioner and, therefore, it was not to be considered when weighing Petitioner's guilt. *See McKee*, 2018 WL 1072808, at *14. The court of appeals also noted that jurors are presumed to follow their instructions. *See id.* That determination is entirely consistent with clearly established federal law. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (noting that "[a] jury is presumed to follow its instructions").

Because any *Bruton* and Confrontation Clause issues were alleviated by Cortez's decision to testify at trial, Petitioner cannot demonstrate that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief on habeas ground I.

### B.     Ground II—Denial of Severance

As his second ground for relief, Petitioner contends that the trial court erred when it denied his "motion for severance based on Butler's confession." (Pet., ECF No. 1, PageID.7.)

As an initial matter, is not clear whether Petitioner himself challenged the trial court's denial of his motion for severance during appellate proceedings. In her dissent from the denial of Petitioner's application for leave to appeal, Justice Cavanagh did note that both Petitioner and Rodney McKee "objected to being tried jointly with their codefendant." *McKee*, 972 N.W.2d at 257 (Cavanagh, J., dissenting). The court of appeals' decision, however, suggests that only Rodney

11

explicitly challenged the denial of the motion for severance on appeal. *See McKee*, 2018 WL 1072808, at *3–5. In rejecting Rodney's argument, the court of appeals stated:

> Rodney argued below that severance was necessary under MCR 6.121(C) because Butler's confession implicated Rodney in the crimes. Rodney submitted with his motion to sever an affidavit asserting that he had pleaded not guilty to all charges and he denied Butler's statements as untrue. In other words, the prejudice that Rodney alleged would occur was premised on Butler incriminating Rodney in crimes in which Rodney denied participating. Rodney maintained that there was "no way for one jury . . . to believe both men." However, Butler testified at trial. He denied having confessed to detectives and he did not attempt to incriminate Rodney. There was thus nothing inconsistent, and certainly nothing mutually exclusive or irreconcilable, between Butler's defense and Rodney's defense. See *Hana*, 447 Mich. at 349, 524 N.W.2d 682. Consequently, the purported prejudice on which Rodney relied to justify severance did not occur.
>
> Nevertheless, Rodney contends that he can make a showing of prejudice based on evidence that was introduced against Butler at trial. In this regard, Rodney argues that the requisite prejudice occurred at trial when the prosecutor cross-examined Butler about his involvement in unrelated homicides.[] Although these other acts did not pertain to Rodney and thus would not have been introduced at a separate trial, we reject Rodney's argument that he is entitled to reversal based on this questioning.[] The evidence relating to Butler's involvement in other homicides did not implicate Rodney in those other crimes, and the evidence of other homicides was only used against Butler. Cf. *People v. Moore*, 78 Mich. App. 294, 299, 259 N.W.2d 351 (1977). Further, the trial court determined that any potential prejudice resulting from admission of the evidence could be alleviated by a limiting instruction. The trial court instructed the jury, in relevant part, as follows:
>
>> You must judge each defendant on the evidence presented against that particular defendant, thus, for example, you—should you find that the evidence shows one defendant to be guilty you should not thereby automatically find the others guilty as well. Judge each defendant based on the evidence against him. Just because some evidence may tend to implicate one defendant does not automatically mean that it implicates the other defendants as well.
>
>> Certain information has been presented to you showing that Cortez Butler may have been involved in certain crimes in the past. Because this evidence has nothing to do with either Rodney or Clifford McKee you are not to consider it against either of them.
>
> A limiting instruction will often suffice "to enable the jury to compartmentalize evidence and consider it only for its proper purpose." *People v. Mardlin*, 487 Mich. 609, 629, 790 N.W.2d 607 (2010) (quotation marks and citation omitted). Jurors are presumed to follow their instructions. *People v. Unger*, 278 Mich. App. 210,

12

235, 749 N.W.2d 272 (2008). Rodney has not provided any basis for overcoming the presumption that the jurors followed the court's instructions, and he has not shown the prejudice necessary to reverse the trial court's joinder decision. See *Hana*, 447 Mich. at 346–347, 524 N.W.2d 682.

Rodney also argues that the requisite prejudice occurred during trial when the prosecutor "introduced inadmissible evidence" in front of the jury when responding to an objection by Butler's counsel.[] Rodney has provided no basis for concluding that he was prejudiced by the prosecutor's brief argument regarding the relevance of the evidence.

In sum, the trial court did not abuse its discretion by denying Rodney's motion for severance, and Rodney has failed to show that the requisite prejudice occurred at trial.

*Id.* (footnotes omitted).

The Court may not grant habeas relief on a claim if Petitioner has not exhausted his state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). A habeas corpus petition, however, "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Even if Petitioner did not explicitly challenge the denial of his motion for severance on appeal, as discussed below, his second ground for relief lacks merit.

There is no due process right to a trial separate from one's co-defendants; instead, the propriety of severance is generally governed by state law. *See* Mich. Ct. R. 6.120, 6.121; *Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). "[A] state trial court's alleged abuse of discretion [in denying severance], without more, is not a constitutional violation." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). "Misjoinder is unconstitutional only if it results in prejudice so great as to deny a defendant his due process right to a fair trial." *LaMar v. Houk*, 798 F.3d 405, 428 (6th Cir. 2015) (citing *United States v. Lane,* 474 U.S. 438, 446 n.8 (1986)).

The Supreme Court has delineated few constitutional rules in this area. The Court has held that separate trials are constitutionally required where the prosecution intends to introduce the

confession of a co-defendant that incriminates another defendant. *See Bruton*, 391 U.S. at 137. The *Bruton* rule is designed to vindicate a defendant's right to confront his accusers, so separate trials are not necessary when the co-defendant is subject to cross-examination. As discussed above, any Confrontation Clause concerns were alleviated when Butler testified at trial.

Beyond the *Bruton* rule, the Supreme Court has left the matter of severance to state law and the trial judge's discretion. The Court remarked in *United States v. Lane*, 474 U.S. 438 (1986), that the denial of a motion for severance does not in and of itself implicate constitutional rights. As the Sixth Circuit has explained:

> A petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden. *See United States v. Horton*, 847 F.2d 313, 316 (6th Cir.1988). As a general rule, joint trials are favored. *See United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir. 1984). Jurors are presumed to follow the instructions of the court and to give each defendant's case separate consideration. *See Francis v. Franklin*, 471 U.S. 307, 324 n. 9, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985). The mere potential for confusion, standing alone, will not outweigh society's interest in the speedy and efficient resolution of criminal trials. *See United States v. Moore*, 917 F.2d 215, 222 (6th Cir.1990).

*Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

In *Zafiro*, the joined co-defendants challenged the failure to sever because they offered conflicting defenses. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Supreme Court declined to adopt a "bright line" rule requiring severance whenever co-defendants have conflicting defenses. *Zafiro*, 506 U.S. at 538. "Mutually antagonistic defenses are not prejudicial *per se*." *Id.* at 538–39. For example, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538–39. The Supreme Court noted that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id. Zafiro*, however, is based on the Federal Rules of Criminal Procedure, not constitutional grounds. *See Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004) ("*Zafiro* involved the interpretation of Federal Rules of Criminal Procedure 8, 14, and

14

18, not the United States Constitution. *Zafiro* thus has no precedential weight in reviewing state court proceedings on due process grounds. . . ."). Thus, while *Zafiro*'s value as precedent in the habeas context is limited, the Court's analysis can be instructive.

As an initial matter, the court of appeals' determination that, as a matter of state law, separate trials or juries were not warranted is binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). However, Petitioner fails to identify how the denial of his motion for severance deprived him of fundamental fairness, especially in light of the fact that the trial court issued a limiting instruction with respect to Butler's statement and the evidence that Butler had been connected to other homicides. As noted above, the court of appeals' determination that juries are presumed to follow their instructions is also entirely consistent with clearly established federal law. *See Weeks*, 528 U.S. at 234 (stating that "[a] jury is presumed to follow its instructions").

In sum, Petitioner has failed to demonstrate that the state courts' resolution of this issue is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief on habeas ground II.

      C.      **Ground III—*Miranda* Violation**

As his third ground for relief, Petitioner contends that Butler "was not provided full and effective *Miranda* warning[s,] and his confession was obtained in violation of *Miranda v. Arizona*." (Pet., ECF No. 1, PageID.8.) Petitioner argues that because the court of appeals determined that Butler's statement was inadmissible, it should not have been "used against the Petitioner at trial." (*Id.*)

The court of appeals did conclude that Butler's statement was obtained in violation of *Miranda*, noting that although Butler had "previously been informed of his *Miranda* rights and appeared to understand those warnings, the detective vitiated the warnings, and invalidated any waiver of Butler's rights, by expressly contradicting the advice required by *Miranda* and instead telling Butler that he was not intending to use what Butler said against him." *McKee*, 2018 WL 1072808, at *11. The court of appeals concluded further, however, that "any error in admitting [Butler's] December 16 confession as substantive evidence against Butler was harmless beyond a reasonable doubt given the untainted evidence of Butler's guilt." *Id.* at *13.

Petitioner asserted on direct appeal that the trial court erred in admitting Butler's confession because "the detectives failed to provide Butler with an effective *Miranda* warning." *Id.* at *14 n.13. Petitioner, however, also conceded that this argument did not entitle him to relief because he could "not seek to have Butler's confession suppressed based on a violation of Butler's rights." *Id.*

The court of appeals' conclusion that Petitioner lacked standing to seek suppression of Butler's confession because of a *Miranda* violation is correct under federal law. *See, e.g.*, *Williams v. Woodford*, 384 F.3d 567, 593 (9th Cir. 2004) (concluding that the petitioner lacked standing to complain about alleged infringement upon a prosecution witness's constitutional rights); *United States v. Fredericks*, 586 F.2d 470, 480–81 (5th Cir. 1978) (concluding that the co-defendant could not seek "to suppress evidence incriminating him that was obtained from a coparticipant in crime without proper compliance with the procedural requirements of *Miranda* or otherwise in violation of that party's Fifth or Sixth Amendment rights"); *Byrd v. Comstock*, 430 F.2d 937, 938 (9th Cir. 1970) (concluding that the petitioner lacked standing to challenge the co-defendant's statement, which was made without *Miranda* warnings, because the co-defendant's right against self-incrimination was personal to the co-defendant). Several federal courts of appeal, however, have

held that, even if a petitioner does not have standing to seek suppression of a co-defendant's statement obtained in violation of *Miranda*, habeas relief may be available for due process violations if the statement was admitted against the petitioner at trial and rendered the trial fundamentally unfair. *See, e.g.*, *Douglas v. Woodford*, 316 F.3d 1079, 1092 (9th Cir. 2003) (noting that the use of a witness's coerced confession at the trial of another individual can violate due process because "illegally obtained confessions may be less reliable than voluntary ones"); *Williams*, 384 F.3d at 593; *Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994) (noting that "[c]onfessions wrung out of their makers may be less reliable than voluntary confessions, so that using one person's coerced confession at another's trial violates his rights under the due process clause"); *cf. United States v. Merkt*, 764 F.2d 266, 274 (5th Cir. 1985) (stating that "[a] defendant may assert her own [F]ifth [A]mendment right to a fair trial as a valid objection to the introduction of statements extracted from a nondefendant by coercion or other inquisitional tactics").

Nevertheless, Petitioner is not entitled to habeas relief pursuant to the foregoing precedent because it does not constitute clearly established federal law as articulated by the Supreme Court. *See Renico*, 559 U.S. at 779 (2010) (citing 28 U.S.C. § 2254(d)(1)). The Supreme Court has never clearly held that an accused can challenge the admission of a witness's or co-defendant's coerced confession. *See Samuel v. Frank*, 525 F.3d 566, 569 (7th Cir. 2008) (discussing the lack of Supreme Court authority on the issue). "While the Supreme Court's opinions could be read to suggest that conclusion, any such reading necessarily would be based on the Supreme Court's dicta, rather than on its actual holdings." *Harris v. Soto*, No. CV 15-0352 BRO (RAO), 2016 WL 2587373, at *9 (C.D. Cal. Mar. 25, 2016); *see also Williams v. Taylor*, 529 U.S. at 412 (explaining that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," as used in § 2254(d)(1), "refers to the holdings, as opposed to the dicta," of Supreme Court

decisions). Circuit precedent simply "may [not] be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Court] has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

Given the lack of Supreme Court precedent regarding Petitioner's third ground for relief, the state courts' rejection of his claim cannot have been contrary to, or an unreasonable application of, clearly established federal law. *See Carey v. Musladin*, 549 U.S. 70, 76 (2006) ("Given the lack of holdings from this Court [on the issue at hand], it cannot be said that the state court 'unreasonably applied clearly established Federal law.'"). Petitioner, therefore, is not entitled to relief on habeas ground III.

### D. Ground IV—Hearsay Testimony

As his last ground for relief, Petitioner contends that he "can challenge the admission of Butler's confession because Butler's statement is inadmissible hearsay." (Pet., ECF No. 1, PageID.10.) Petitioner suggests that the admission of such violated his due process rights. (*Id.*)

As an initial matter, Petitioner asserts that he raised his hearsay claim before the court of appeals. (*Id.*) Petitioner, however, has not provided his appellate briefs with his habeas petition, and the court of appeals did not discuss whether Butler's confession constituted inadmissible hearsay. However, a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2).

Even if Butler's statement constitutes inadmissible hearsay, Petitioner simply cannot demonstrate that its admission violated his due process rights. There is nothing inherent in the admission of hearsay testimony generally that offends fundamental principles of justice. In fact,

> [t]he first and most conspicuous failing in [arguing that hearsay testimony violates due process] is the absence of a Supreme Court holding granting relief on [that] theory: that the admission of allegedly unreliable hearsay testimony violates the

18

> Due Process Clause. That by itself makes it difficult to conclude that the state of appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

*Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)). Moreover, while hearsay itself is not constitutionally impermissible, its admission could raise the specter of a Confrontation Clause violation. However, as thoroughly discussed above, no Confrontation Clause violations occurred because Butler chose to testify at trial. Petitioner, therefore, is not entitled to relief on habeas ground IV.

**IV.     Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason . . . could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a

full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   August 22, 2023                                    /s/ Sally J. Berens
                                                            SALLY J. BERENS
                                                            United States Magistrate Judge